Good morning and may it please the court my name is Kevin Crabtree and I represent the appellant Blanca Orellana. This is a naturalization case where the applicant was denied based on her criminal history which was for a single misdemeanor conviction for failure to disclose a material fact affecting an insurance benefit to with outside employment and sources of income during a 24-week period from February 2002 to August 1402. This case is not about who bears the burden of proof so much as what is it that my client must prove and what evidence she can introduce to prove to establish her burden to carry her burden. She does not have to prove the precise breakdown of what the civil restitution order was relating to or what the losses on the dismissed counts were. She must only prove through a preponderance of the evidence that the losses tied to the count and conviction were less than $10,000 and in her complaint she laid out a theory about how the facts showed that the total amount was only $5,010.98. Those are the value of the check payments for weekly wage replacement payments of $349.10 per week. The facts in the complaint articulated that she had suffered numerous orthopedic injuries and impairments as a result of the attempting to catch an elderly patient who was falling at this nursing home and that she had undergone multiple orthopedic surgeries. There was really no dispute that she had during the litigation. We think that the criminal complaint itself is crucial to understanding what the actual losses were because the criminal charge itself confined the both by its nature and temporarily the conviction and the losses. The most natural reading of count three of the criminal complaint is that the insurance benefit that was affected was the wage replacement payments and not as the district court and the government have suggested perhaps unnecessary or exaggerated medical costs. I think that's really the crucial thing because the district court suggested that we had not adequately explained how do you get from point A to B where is this $30,000 restitution number coming from and suddenly we're arguing $5,000. We know there's a discrepancy there but this was the $30,000 was from a civil restitution agreement in a workers compensation case and there's numerous other factors besides the loss to the victim in count four. Can I ask you something Mr. Crabtree? This is something that's been puzzling me about the case. I mean at the end of the day she was offered another opportunity to amend which she chose not to do and maybe I'm being naive but it would seem like it would be very simple if she's holding the card so speak as to what the issue and why hasn't that happened? In its order the district court suggested it strongly already made up its mind said that it was highly doubtful that we would be able to amend the complaint and in the interest of my clients limited resources we chose not to amend. I mean an amendment of the complaint if you have the information is very simple compared to an entire appeal to the Ninth Circuit so when you're talking limited resources I'm still really puzzled by this. We perceived it was futile because the arguments that I'm raising here were actually in the briefing on the motion to dismiss and the court seemed to acknowledge those but yet nevertheless believe that it would be these arguments basically these arguments were submitted to the court and we felt that the court had already made up its mind on them. In terms of the amount I mean you talk about the specific amount that she received as temporary disability payments was there other money there and turning medical treatments or other things that could be considered or should be considered? We we believe that the medical any medical payments are should be excluded because of the counts the the language in the criminal complaint as I was saying it's the most reasonable reading is that it was relating only to the wage replacement payments so that's our argument there. In terms of potential investigative costs we have briefed the issue the argument that under the American rule these costs should be excluded from the quantum of loss to the victim in the aggravated felony context because they don't actually reflect necessarily the moral culpability of the of the criminal defendant. There are we've cited some examples from bankruptcy proceedings violation of a stay and bankruptcy that the the losses in litigating that stay violation should not be recoverable even though it doesn't make the victim whole. We've cited examples from federal criminal prosecution of mortgage fraud where there was some market fluctuation and and the value of the property change so the the court did not award the those losses because it wasn't really tied to the conduct of the defendant and so similarly here particularly where the the state of California for policy reasons has established a work compensation program and the insurance company has a duty to administer and regardless of whether the claim is fraudulent or not and to exercise due diligence and conduct an investigation so we think that those costs really should be excluded and it all come so it comes back to the the check value that's really the crux of our argument and so we didn't we don't have to break down the exact civil restitution amounts we just have to prove that the only thing that really should be considered was those check payments. So let me let me ask you if if you were to win on appeal what what happens then in the district court? We we believe that the remand the district court should only consider the value of the check payments because the of the argument that the losses from investigative costs are not are not factored in the losses potential losses from the dismissed counts for many purported false medical needs or medical services all that is excluded by nature of the accounts the language in count three of the criminal complaint. Does it go to an evidentiary hearing or a trial? The district court reviews de novo the naturalization application and we assert that it can consider evidence and in fact is obligated to including I'd like to if I could just segue into Nijoan and the standard that the the government here the district and the district court said that it would not consider anything outside of the criminal court file that is plainly contrary to Nijoan that while the facts of Nijoan involve sentencing materials it is cited favorably to the Board of Immigration Appeals precedent in matter of Babysakov and that case specifically says that any evidence can be considered such as testimony or admissions of the respondent and removal proceedings. Following up on Judge Ikuda and taking what you just said if the Nijoan permits additional evidence if it goes back it simply just means the complaint isn't dismissed and then you move forward to summary judgment or some other possibly an evidentiary hearing. So at that point then all of this information would come in and the judge would have to make a determination? Yes your honor. We are simply seeking the opportunity to pursue summary judgment or potentially a summary bench trial or a full evidentiary hearing should the district court find it necessary. We think the documents prove our point but we she has been not even provided that meager opportunity at this point. I have a question Mr. Crabtree about your reading of count three. You are assuming that that count three limits the loss amount to payments made between February 20th and August 14th which are the dates in the complaint and I wonder if that is the only way to read that that charge because it actually charges concealment and the concealment is of information that affects the initial and continued right to payments. So how is it that that language combined that the the combination of those two sections of count threes charging document don't extend a lot the actual losses to a time period outside the specific dates listed in that count? I think because of the dismissal of counts one and two if the when you review all the counts together it seems that counts one and two more reasonably relate to an allegation of filing those are providing false information in an insurance application. So as we assert that those counts were intended to perhaps be connected to false information of that actually related to the medical care for example in count two the the allegation was that she failed to that she falsely stated she had not driven since the injury and so that is I think read in context that the count three relates only to the wage replacement. Okay well if you disregard what counts one and two and just read count three on its own it doesn't seem to limit the loss amount to that time period it says during this time period you concealed but doesn't limit the what you can it just doesn't limit the the harm caused by the concealment to that very same to the time period of the concealment itself. That we think that the the court the court was the prosecutor was attempting to confine the what they actually proved beyond a reasonable doubt through her plea of guilty was her conduct during that time frame and the it's kind of speculation that she was not in violent was not guilty of it's speculation that she did not deserve the wage replacement payments before that time frame and Nijewan focuses on what the defendant was convicted of doing on a specific occasion it excludes any uncharged or unrelated conduct the Supreme Court Nijewan specifically cited to favorably to a lockout in the Third Circuit which focuses on this uncharged or unrelated or related conduct issue so the court really should focus on that time frame in the complaint. The Harvey waiver issue she did she specifically entered into this agreement with the district attorney in the plea agreement that uncharged conduct dismissed counts could come into her sentence the this untied her the restitution amount from the actual count of conviction the Third Circuit case seeing which we've cited in a brief illustrates this issue where if if a person has not necessarily been been ordered to comply with if the restitution isn't necessarily connected to the count of conviction because of their acceptance of something like a Harvey waiver then it is not a basis to find that it's more than ten thousand dollars and we explained by preponderance why it only was related to the five thousand here and I will reserve the balance my time please. All right you may. Ms. Peoples. May it please the court good morning your honors my name is Monique Peoples and I'm here on behalf of the defendants appellees. Your honors the district court considered the evidence that Ms. Orellana claims the district court failed to consider and accepted all the arguments she claimed that the district court rejected. Ultimately however the extra record check payments that she so heavily relies on simply do not save the day. They were not part of the underlying conviction record and in any event she cannot show that those check payments represent the sole loss on her count of conviction and given this the court was correct to grant the government's rule 12b6 motion and it should be affirmed here. As an initial matter it's important to clarify that Ms. Orellana carries the burden of proof here. She has the burden to show that she's entitled to naturalization including meaning the good moral character requirement. That means she has the burden to show she was not convicted of an offense that would preclude her from establishing good moral character. The Supreme Court's decision in Parada just last week confirms that the party with the burden to prove facts regarding a conviction bears the risk associated with failing to do so and that any ambiguities work against the non-citizen not the government. Those principles applied here show that Ms. Orellana cannot meet her burden. First she can't state a plausible claim that the loss tied to count three for the count of conviction is less than $10,000. Nijuwan allows consideration of sentencing materials in the loss inquiry including a restitution order. Numerous courts since Nijuwan have relied on restitution orders to find that the loss was not less than $10,000 and the Fifth Circuit in De Corolla's said that where defendant has assented to a restitution order it is reliable. Here the sentencing relating material reliably ties $30,000 to count three. As part of her sentence on count three she was ordered to make restitution for damages in an amount in manner to be determined by the probation officer and ordered by the court. In here the probation officer and the court later determined that she should comply with the settlement agreement. That settlement agreement is for $42,000 but it deducts $30,000 payable to Acadian as a credit per the restitution agreement. So the opposing counsel argues that because she made the Harvey waivers and allowed the courts to consider losses associated with the other two counts that were dismissed that any additional amounts could be attributed to the other counts. What's your response to that? Well first it's undisputed that she entered into the Harvey waiver so in exchange for she agreed that those counts and uncharged matters would be considered in her sentencing. So by application of the Harvey waiver the the Harvey waiver incorporates the $30,000 and tethers it to count three. So that's undisputed but as a district court found even if it accepted her arguments regarding the Harvey waiver she has the burden to show that the losses attributed to those dismissed counts are less. She has the burden to show that those dismissed counts make her loss to count three less than $10,000 and she hasn't done that. She has not explained what losses were attributable to those dismissed counts. She hasn't explained how the loss calculation was even determined whatsoever. So she's just speculating that the $30,000 restitution includes losses from counts one and two and that somehow the calculation means that the losses attributable to count three were less than $10,000. She relies on saying but that that case is different that relied on a federal restitution order which was allowed to take into account losses that were not necessarily tied to the count of conviction but here California law requires that the restitution order is calculated on the actual loss to the victim and again the district court said even if it accepted her argument regarding the Harvey waiver she had the burden to show that the actual loss on count three is less than $10,000 and she didn't do that. So again as the court as the loss to the check payments. On its face it simply alleges that between February 20th and August 14th that Miss Orlano concealed and knowingly failed to disclose her outside work which affected her entitlement to insurance benefits and the amounts of those benefits. So the those dates don't refer to check payments those dates appear to refer to when she was first notified that she had obligation to disclose her any outside work while receiving disability payments and the August 14th date refers to the last date that she was observed by the investigator doing work at this family's home. So it doesn't refer to check payments the count itself is not so limited and so the six months of check payments that she received represent only one portion of the greater loss that Okadian suffered. So even if you look at her complaint there's numerous other costs or losses that she wants to have the court ignore but we can't. If we look at the check payments we have to look at everything else too and there's $5,000 in legal and investigation fees, $11,000 in temporary disability fees as of August 2003, $56,000 that Okadian said it paid total on her claim again as of August 2003. So she cannot show that the loss tied to her count is less than $10,000 there's just simply too many other fees and costs that are in the documents attached to her own complaint that show that that's not plausible. When you say she can't I mean maybe she can there's a lot of numbers floating around and Mr. Crabtree says well when a district court dismisses it basically it's with pretty clear indication that the the court is so dismissive of the situation that an amendment would not be possible. And so I think it's a question of what the standard is here because the the district court obviously was frustrated by this and didn't think these other kind of explanations could come in under Niiwajan which I think was incorrect. So the question is given all the numbers floating around she's at a motion to dismiss stage and the question is should at that stage it have been dismissed and does it matter that she chose not to amend to try to fix the situation? Well there are a couple points I want to make there your honor. This is we're talking about an 18 year old are the ones that were attached to Ms. Orellana's complaint. So the courts the criminal courts file was destroyed due to the age and so the documents that exist appear to exist were the ones that she attached to her complaint. So it doesn't appear that there are any other documents or information or evidence that she can then rely on. What was attached to the complaint is it. And so the district court looked at all of that, considered all of her arguments, accepted them as true, but still ultimately found that there was no plausible claim based on those documents that the loss related to count three is less than $10,000. So that's with using Niiwajan's sentencing related materials and even going outside of the record. It's simply not plausible when you look at the $30,000 restitution amount, the $5,000 legal investigation fees, the numerous amounts on some spanning 50s almost $56,000 that Acadian expended in medical and disability benefits. It simply wasn't plausible. She could not meet her burden to show that the relevant loss fell under $10,000. And so that is why the court properly dismissed her complaint under Rule 12b-6. An amendment she could have, as you noted, amended her complaint. She determined that she didn't want to do that, which was her choice. But based on these documents, what appear to be the universe of documents, she simply can't meet her burden. I would just briefly mention that her other evidentiary and ultra-virus arguments are either unexhausted, they're waived, or they have no merit. As discussed, the district court didn't apply any federal rule of evidence to exclude the extra record check payments. Rather, the district court found that those check payments were outside of the loss inquiry under Niiwajan. But again, the district court said even if it did consider the check payments, she still had not met her burden. And the ultra-virus argument, again, is unsupported. Ms. Orellana doesn't show how any clear or mandatory language of Section 1421C was violated or that the government contravened. And under the federal rules of evidence 101 and 1101, those rules apply to the district court's proceedings. So the district court, again, gave Ms. Orellana the benefit of the doubt. Taking the factual allegations in her complaint is true, and accepting her arguments regarding the Harvey waiver, regarding the restitution order, regarding the extra record check payments. Ultimately, however, that still wasn't enough for her to state a valid claim. And so because she has no valid claim, a district court decision should be affirmed. And unless the court has any other questions, I will rest on our briefs. Thank you. I would just like to point out that the California law, while limiting restitution to the actual loss to the victim, does not require that the loss be tied to the count of conviction. That is the purpose of the Harvey waiver. And that feature of the restitution order in Sing, that's why we cite that case. Because, again, NINJA 1 requires that the loss be tied to the specific count of conviction in order to have the loss factored in, the quantity factored into the aggravated felony determination. Circling back to Judge Erickson's question about the text of count three, I would just also add that the initial and continuing right, it's alleging a timeframe in the text. And one reading might be that it's the initial award of insurance benefits. Another is that it's the initial award of benefits during that timeframe that the district attorney chose to articulate. Finally, the civil restitution order in this case was entered following the judgment of guilt and sentencing. I think that there are policy concerns about allowing a finding that's centered around a Congress-intended conviction to be the relevant threshold, and then delegating that finding to a state appellate, or excuse me, state's administrative agency. And I can rest on that. Thank you very much. Thank you. Thank both of you for the argument this morning. Oriana versus Wolf is submitted, and we're adjourned for the morning.
judges: McKeown, Ikuta, Ericksen